IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTONIO G. REYES,

Plaintiff,

v.

ANTHONY RAMOS,

Defendant.                                        No. 07-541-DRH

MEMORANDUM AND ORDER

HERNDON, Chief Judge:

## I.  Introduction

Before the Court is Defendant's Initial Motion for Summary Judgment
(Doc. 16).  Plaintiff has filed a response to the motion (Doc. 19).

Plaintiff is an inmate in the IDOC and brings this suit pursuant to **42
U.S.C. § 1983.**  Plaintiff's original Complaint included two claims.  The first claim
against Defendant B. Thomas and J. Bauersachs regarding a disciplinary proceeding
against Defendant was dismissed (Doc. 6).  Plaintiff's Complaint also included a
claim against Anthony Ramos for violation of his Eighth Amendment Rights due to
excessive noise and lack of cold water in his cell in the segregation unit at Menard
Correctional Center.  Defendant Ramos subsequently filed a motion for summary
judgment on Reyes' conditions of confinement claim.  On February 12, 2010, the
Court held a hearing on Ramos' motion.  At the hearing, Reyes requested and was
granted leave to file supplemental authority to his response (Doc. 29).  On February
26, 2010, Reyes submitted his supplemental authority (Doc. 30).  Having considered

the parties briefings as well as their arguments at the hearing, the Court rules as follows.

## II.  <u>Factual Background</u>

Antonio Reyes is an inmate on at the Menard Correctional Center and brings this action pursuant to **42 U.S.C. § 1983** against Anthony Ramos for conditions of confinement he experienced while housed in the segregation unit at Menard.  Plaintiff was housed on two gallery in the North II segregation unit at Menard from April 28, 2005, though October 8, 2005 (Doc. 10 ¶15).  Staff in the segregation unit were instructed to control the noise by touring the unit every 30 minutes to ensure that noise levels were acceptable and to issue disciplinary tickets to those were creating a disturbance (Doc. 18, Ex. A at ¶4).  Further, cells were furnished with flushable toilets and workable sinks, but staff were instructed that in the event that cells experienced plumbing issues, inmates were to be provided with cups of ice (*Id.*, Ex. A at ¶¶5-6).

During Reyes time in segregation, inmates on two and four galleries would "yell, sing, bang and scream all day and through the night" which prevented Reyes from receiving "restful sleep." (Doc. 19 p. 2; 19-1 ¶ 12).  Also during his time on two gallery, Plaintiff experienced faulty plumbing in his cell which prevented him from obtaining cold water from the faucets (Doc. 19-1 ¶¶6-8).

Reyes complained of his conditions by writing a letter to Defendant Ramos (*Id.* at ¶12).  Reyes received no response from his informal complaint (*Id.*).  On May 30, 2005, Reyes filed a formal grievance, specifically complaining about the

loud noise in his unit.  The May 30 grievance was exhausted (Doc. 16, Ex. B).  However, the grievance failed to state that Anthony Ramos was responsible for the excessive noise in the segregation unit (*Id.*, Ex. B at ¶8).  Further, when Reyes received the findings of the grievance the words "Grievance has no merit" were written on the bottom of the grievance form as will as a scribbled signature and date (Doc. 1-3).  While the signature is illegible, Plaintiff was informed that the writing was by Defendant Ramos.

### III.  Summary Judgment Standard

Summary judgment is appropriate under the **FEDERAL RULES OF CIVIL PROCEDURE** when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986).**  The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law.  *Wollin v. Gondert*, **192 F.3d 616, 621-22 (7th Cir. 1999).**  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant.  *Schneiker v. Fortis Inc. Co.*, **200 F.3d 1055, 1057 (7th Cir. 2000);** *Baron v. City of Highland Park*, **195 F.3d 333, 337-38 (7th Cir. 1999);** *Santaella*, **123 F.3d at 461 (citing** *Celotex*, **477 U.S. at 323);** *Regensburger v. China Adoption Consultants, Ltd.*, **138 F.3d 1201, 1205 (7th Cir. 1998) (citing** *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). While the Court may not "weigh evidence or engage in fact-finding" it must determine if a genuine issue remains for trial. *See Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations as stated in the pleadings; rather, the non-movant must show through specific evidence that an issue of fact remains on matters for which the non-movant bears the burden of proof at trial. *Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (citation omitted); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].")**. Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000)

**(citation omitted).**

### IV.   Discussion

**A.     Administrative Exhaustion**

Defendant Ramos first argues that Reyes has failed to exhaust his claim as to the excessive noise in his cell unit as Reyes failed to include Ramos' name or a description of Ramos on the grievance he filed.[1]

Plaintiff's claims are subject to the exhaustion requirement set forth in **42 U.S.C. § 1997e(a)** as follows;

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

While not jurisdictional *per se*, exhaustion is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. ***Perez v. Wisconsin Dept. of Corrections***, **182 F.3d 532 (7th Cir. 1999).**

The State may legitimately enact regulations which require "factual particularity" in a grievance. ***Strong v. David***, **297 F.3d 646, 649-50 (7th Cir. 2002).** Illinois has done so. **29 IL ADC 504.810(b), amended effective May 1, 2003**, mandates that a grievance:

---

[1]  The Court notes that the parties do not dispute that Reyes' grievance as to the plumbing issues was properly exhausted.

shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." ***Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).** The Supreme Court has held that exhaustion means "proper exhaustion;" that is, the inmate must file a timely grievance utilizing the procedures put in place by the prison system. ***Woodford v. Ngo*, 126 S.Ct. 2378, 2385 (2006)(citing *Pozo*, 286 F.3d at 1025).** *Woodford* also explains that the purpose of requiring inmates to exhaust is to "give the agency a fair and full opportunity to adjudicate their claims." **126 S.Ct. at 2386.**

While Ramos argues that Reyes has failed to exhaust because his grievance did not name Ramos, Reyes argues that he was never informed that he had to include a name or description of Ramos in his grievance. The Menard Inmate Orientation Manual provided by Reyes does not include any reference to the requirement stated by Ramos, that a description of the party must be included in the grievance. Further, defendant has not cited a case where the Seventh Circuit has held that a grievance which does not include the name of the defendant is not exhausted. Rather, the Seventh Circuit has noted that "[i]f Illinois wants grievances to be more detailed, it must adopt appropriate regulations and *inform prisoners*

*what is required of them.*" ***Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (emphasis added).** Defendants have not pointed to any evidence that Reyes was informed in any changes in the rules or regulations requiring Reyes to describe Ramos in his grievance. The Seventh Circuit has suggested that prisoners who follow the prison's "accepted practice" with regard to the method of submitting grievances rather than the letter of the administrative regulations will be given the benefit of the doubt as to exhaustion. ***Curtis v. Timerlake*, 436 F.3d 709, 712 (7th Cir. 2005).** As Reyes followed the procedures as listed in the manual and the grievance officer accepted the grievance rather than dismissing it for failure to list the names of the officers,[2] the Court finds that Reyes has exhausted his grievance as to excessive noise.

## B.    Excessive Noise and Faulty Plumbing

Defendant Ramos next contends that he should be granted summary judgment on Reyes claims of excessive noise and faulty plumbing because of the doctrine of qualified immunity. Ramos maintains that he lacks personal involvement, he made a good faith effort to control the noise and inmates were given ice to offset the lack of cold water, and that the noise and lack of cold water do not constitute violations of the Eighth Amendment.

---

[2] The Court notes that Menard failed to reject Reyes' grievance for his failure to include the officer's names, but rather denied the grievance on its merits. In the analogous situation of an untimely grievance, the Seventh Circuit has held the untimeliness of the grievance is waived where the prison did not reject the grievance on that basis, but denied it on the merits. ***Conyers v. Abitz*, 416 F.3d 580, 584-85 (7th Cir. 2005) ("We have also explained, however, that if prison administrators choose to consider the merits of an untimely grievance, then the claim has been exhausted.").**

Under **Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151 (2001)**, whether a defendant has qualified immunity is determined by a two-step process. Saucier held that the court must first determine whether plaintiff has alleged a violation of a constitutional right; if the answer is yes, the court must go on to consider whether that right was clearly established at the time. **Saucier, 533 U.S. at 201, 121 S. Ct. at 2156.**[3]

Plaintiff maintains that his Eighth Amendment rights were violated because he was forced to endure unconstitutional conditions of confinement.  The Constitution "does not mandate comfortable prisoners." **Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 2340 (1981)**.  The Eighth Amendment requires that a prison inmate be housed under "humane conditions" and provided with "adequate food, clothing, shelter, and medical care." **Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994)**.  In order to show a constitutional violation, plaintiff must meet both the objective and subjective prongs of the test established under Farmer; he must demonstrate that "(1) that he suffered a sufficiently serious deprivation and (2) the [defendant] acted with 'deliberate indifference' to his conditions of confinement." **Sain v. Wood, 512 F.3d 886, 893-**

---

[3] Recently, the Supreme Court in **Pearson v. Callahan, – U.S. –, 121 S.Ct. 808 (2009)** held that the court may, in an appropriate case, deviate from rigid adherence to the sequence of the two-step Saucier process.  "[W]hile the sequence set forth there is often appropriate, it should not longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." **Pearson, – U.S. –, 129 S.Ct. at 819.**

**94 (7th Cir. 2008) (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979).**

However, in order to be liable for the alleged constitutional violations, Ramos has to have some personal involvement in the conditions that Reyes experienced.  There is no respondeat superior liability in Section 1983 cases. ***Sanville v. McCaughtry*, 266 F.3d 724, 749 (7th Cir. 2001); *see also Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility.")**.  Instead, liability depends on the defendants' own knowledge and action, "not on the knowledge or actions of persons they supervise." ***Burks*, 555 F.3d at 594.**  "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." ***Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001).**  However, a supervisor can be personally involved in the violation when he "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge of consent." ***Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986).**  A supervisor is liable only for his own misconduct, not for the misconduct of others under his authority. ***Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985)**.

Here, Reyes argues that Ramos did actively participate in his constitutional deprivation.  Reyes points to two instances that show involvement on Ramos' part.  First, Reyes contends that Ramos is liable because Reyes sent an informal complaint to Ramos and Ramos failed to respond to the complaint.  At the

hearing, Reyes agreed that the normal course of proceedings at Menard when dealing with a complaint was to file an informal complaint and if the issue was not resolved or the complaint not responded to, then the inmate could then file a formal grievance.  Reyes admitted that not receiving a response from Ramos was not uncommon as he had filed many informal complaints to which he had never received a response.  This lack of response was a normal part of the process.  Merely sending a defendant a correspondence regarding the inmate's conditions does not constitute personal liability. ***Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (fact that inmate sent letter to defendant did not survive summary judgment because there was no evidence that defendant was personally involved or responsible for the conditions experienced by plaintiff).**  Further, the Seventh Circuit has found, at the very most, that a failure by a supervisor to respond to an inmate's informal complaint is negligence in some cases, but is not indicative of deliberate indifference.

 ***Johnson v. Daughtry*, 433 F.3d 1001, 1012 (7th Cir. 2006).**  Here, Ramos' failure to respond to Reyes informal complaint does not suggest that Ramos' was personally involved in the acts against Reyes, nor did it constitute deliberate indifference.

          Reyes also argues that Ramos was personally involved in his constitutional deprivation because he wrote on Reyes' returned grievance form that the grievance was without merit.  Reyes points to his grievance regarding the excessive noise as evidence of Ramos' involvement in the excessive noise problems

in segregation.  In particular, he points to a scribbled note at the bottom of the grievance form which states that the "[g]rievance has not merit."  While neither party could say for certain whether Ramos had written the statement which was signed on June 11, 2005,[4] Reyes stated that he was told by someone that Ramos wrote the statement.  The grievance was later reviewed and dismissed not on the merits, but because it was the subject of a previous grievance which had already been addressed.

The Court first notes that Reyes has not pointed to any evidence, other than the scribble at the bottom of the grievance and Reyes' own belief that the signature was Ramos', to suggest that Ramos was part of the grievance process and denied Reyes' grievance.  Nothing on the grievance suggests that Ramos was part of or had any input in the grievance process.  ***Johnson*, 444 F.3d at 584 (summary judgment granted where evidence showed that defendant was not part of the grievance process and was not in charge of reviewing grievances)**.  Further the grievance was later dismissed, not by Ramos and not because it lacked merit, but because the issue had already been addressed in a previous grievance.   Even if the signature is Ramos', Reyes has failed to point to any case law suggesting that a supervisors' signature on a complaint makes him personally liable for unconstitutional conditions.  Therefore, the Court finds that the scribbles at the bottom of Reyes' grievance do not constitute personal involvement on Ramos' part.

---

[4]  The Court notes that the statement is signed but that the signature is illegible and amounts to no more than a few scribbles on the paper.  The signature is then dated with what appears to be 6/11, the same date that the counselor filed a response.

Having reviewed the briefs and considered the arguments of the parties, the Court concludes that nothing in the record suggests personal involvement on Ramos' part. Rather, the record suggests that Ramos served in a supervisory role and can not be held liable under Section 1983. Therefore, the Court **GRANTS** Defendant Ramos' Motion for Summary Judgment (Doc. 16).

### V.   Conclusion

Accordingly, the Court **GRANTS** Defendant Ramos' Initial Motion for Summary Judgment (Doc. 16) as Defendant Ramos had no personal involvement in Reyes' alleged unconstitutional conditions of confinement. The Clerk to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 23rd day of March, 2010.


 /s/   David R Herndon

**Chief Judge**
**United States District Court**